**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| TREMAYNE LEWIS SR., #442-207, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PWG-18-3616 |
| WARDEN FRANK BISHOP, | * | |
| ASST. WARDEN J. NINES, | | |
| MEDICAL RN HOLLY L. PIERCE, | * | |
| Defendants | * | |

## MEMORANDUM OPINION

On March 8, 2018, Plaintiff Tremayne Lewis, Sr. was transferred to North Branch Correctional Institution ("NBCI"), where he complained that he could not eat food prepared with tomatoes. *See* Compl. 2, ECF No. 1.[1] On November 9, 2018, Lewis signed an unverified Complaint, asserting that following his transfer, more than 200 meals were served that he could not eat because they contained tomatoes. *See id.* Lewis claims his weight has fluctuated and that Warden Bishop and Assistant Warden Nines (collectively, the "Correctional Defendants") have dismissed his administrative remedies procedure ("ARP") grievances on the grounds that he has gained (not lost) weight and that his tomato allergy was self-reported and not medically verified. *See id.* He states that nurse practitioner Holly Pierce, also a defendant in this case, will not send the dietary department notification of his allergy. Lewis seeks $500,000 in damages and transfer to a "[j]ail that will honor my allergy to [t]omatoes."[2] Compl. 3.

---

[1] This opinion cites to pagination assigned through the Court's electronic docketing system.

[2] NBCI staff confirm that Lewis was transferred from NBCI to Western Correctional Institution ("WCI") on August 7, 2019. His request for injunctive relief is thus moot.

The Correctional Defendants and Pierce have filed motions to dismiss or, in the alternative, for summary judgment (ECF Nos. 9, 14), which I construe as motions for summary judgment.[3] Lewis was twice advised that he was entitled to file an opposition response and supporting materials,[4] and he has chosen not to respond. A hearing is not needed to resolve this case. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendants' motions for summary judgment are granted.

## BACKGROUND

The factual allegations in Lewis's Complaint run no more than a few sentences. In short, Lewis alleges that Pierce told him she would not "honor" his tomato allergy because of grievances he previously had filed against her. Compl. 2. He says the dietary department told him that "as long as Ms. Holly Pierce doesn't send medical paperwork saying I don't get tomato trays I will not eat on those days." *Id.* He complains the warden and assistant warden "dismissed my case saying I gained 5 pounds in 5 months and that I am self reporting my allergy to tomatoes." *Id.*

**Pierce's Assertions**

Pierce, a certified nurse practitioner, was employed through Wexford Health Sources, Inc. to provide health services to NBCI prisoners during the relevant period noted in the Complaint. Pierce Aff. ¶ 1, ECF No. 9-4. Pierce states that Lewis first reported a tomato allergy on October 25, 2008, and that in April 2014 he reported to a mid-level medical provider that if he ate tomatoes his throat and face became swollen. *Id.* ¶ 3. The dietary department was informed of Lewis's condition but did not place him on a tomato-free diet. *Id.* When Lewis was transferred to NBCI

---

[3] Defendants' dispositive motions are treated as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

[4] These notices were sent to Lewis on February 8 and March 11, 2019 (ECF Nos. 12, 15) pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

in March 2018, his tomato allergy continued to be noted in his medical records. *Id.* ¶ 4. However, he did not report any tomato allergy or other dietary complaints to medical staff until August 2, 2018, when he asked via a sick-call request to be given substitute foods in lieu of tomatoes. *Id.* He was seen on August 7, 2018, and was told not to eat tomatoes or tomato products. *Id.* Pierce says Lewis never discussed his concerns about a tomato allergy during his encounters with her[5] and was not referred to her for a clinical evaluation regarding his allergy. *Id.* ¶ 5.

Pierce references the Department of Public Safety and Correctional Services ("DPSCS") Medical Dietary Manual, which provides that in cases of severe allergic reactions to food, a patient who has consulted a dietician and receives an approval from the regional medical director may be entitled to special therapeutic diets. *See id.* ¶ 6. For all other non-life-threatening food allergies or intolerances self-reported by prisoners, including allergies to foods such as tomatoes and onions, the manual recommends that the medical record be documented and that the prisoner be advised to avoid consuming the food; the manual does not mandate special dietary orders to eliminate problematic foods from the prisoners' meals. *See id.*; Dietary Manual 18, ECF No. 9-5. Pierce notes that Lewis has not lost weight due to avoiding tomatoes. In fact, during the time in question, his weight increased from 166.6 pounds in May 2018 to 172.6 pounds in August 2018 to 173.4 pounds in November 2018. Pierce Aff. ¶ 7.

**Correctional Defendants' Assertions**

Correctional Defendants argue they enjoy immunity from suit under the Eleventh Amendment. *See* Correctional Defs.' Mem. 5-6, ECF No. 14-1. They also argue that they

---

[5] This assertion is at odds with the medical record, which indicates that Pierce was the medical provider who examined Lewis on August 7, 2018, for his complaint concerning the tomato allergy as well as for a complaint that he was experiencing trauma-related eye pain. *See* Med. R. 17-18, ECF No. 9-3.

personally played no role in investigating Lewis's complaints of a tomato allergy and that the medical attention afforded Lewis has been constitutionally sufficient under the Eighth Amendment. *Id.* at 6-9. In addition, they raise an affirmative defense of non-exhaustion of administrative remedies and contend that dismissal is warranted because a final decision on the appeal of Lewis's ARP grievance (NBCI 1289-18) was not rendered until two months after Lewis filed this lawsuit. *See id.* at 9-11.

Correctional Defendants state that Lewis filed two grievances concerning his allergy-related weight loss: ARP NBCI 1289-18, which was filed on August 23, 2018, and APR NBCI 2094-18, which was filed on December 21, 2018. Acting Warden Roderick investigated and dismissed the first grievance because Lewis had gained weight and because, under the Medical Dietary Manual, a special dietary order is not needed when a prisoner who self-reports an allergy can stay safe simply by avoiding the food. Aug. 2018 Grievance R. 1-8, ECF No. 14-3. Roderick dismissed the second grievance because Lewis's allergy claim had been documented several times by medical personnel who recommended that he simply avoid eating tomatoes. Dec. 2018 Grievance 2-20, ECF No. 14-4.

In response to the first grievance (ARP NBCI 1289-18), ARP investigator Parrish Kammauf consulted with Scott Steininger, the correctional dietary regional manager for the western region. *See* Aug. 2018 Grievance R. 2. Steininger tallied the calorie count for current menu items over a five-week cycle and deducted the calories for items containing tomatoes. He found that the average daily caloric total, excluding foods with tomatoes, was 2,909 calories. *Id.* Given Lewis's height of 74 inches, his optimal weight range is 148 to 193 pounds. Lewis weighed between 166.6 pounds and 173.4 pounds while at NBCI and thus was within an appropriate weight range despite avoiding meals containing tomatoes. *See id.*; Pierce Aff. ¶ 7.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the district court must view the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court may rely only on facts supported in the record, not assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law," *Anderson*, 477 U.S. at 248, and a dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id*.

**DISCUSSION**

The Eighth Amendment, as incorporated by the Fourteenth Amendment, prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to "deliberate indifference" to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to

deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).

"[D]eliberate indifference requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Id.* at 696 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In cases like this, there must be a showing that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective component is satisfied only where a prison official "subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a

prisoner." *Estelle*, 429 U.S. at 106; *see also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference.").

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. The reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001). The patient's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

Here, the medical records enclosed with Pierce's motion to dismiss show that Lewis once complained about his tomato allergy prior to his transfer to NBCI. Specifically, an entry notes that on April 10, 2014 he reported that he had a tomato allergy and that he "gets hungry because he will not eat the food that contains [t]omatoes." Med. R. 2, ECF No. 9-3. According to the entry, Lewis further stated that "the last time he ate" tomatoes, in 2000, "he had swelling of the throat and face and had to be rushed" to the hospital. *Id.*

Lewis, however, did not report his concern to Pierce during visits occurring at the time of his transfer to NBCI or for several months thereafter. *Id.* at 6-8, 10-11, 12-14. The first record of a discussion on this subject is dated August 7, 2018. When, on that occasion, Lewis complained about his tomato allergy, Pierce advised him to refuse to eat them when they are served.[6] *Id.* at 17-18.

---

[6] Lewis's primary concern that day was eye pain caused by trauma, and for this he was referred to a provider for evaluation and treatment. *See* Med. R. 17-18.

Pierce examined Lewis again on August 24, 2018, for a report of sexual assault, *id.* at 21-22, and once more on November 15, 2018, concerning injuries alleged to have occurred during a cell extraction, *id.* at 25-27. On January 17, 2019, LPN Ryan Browning interviewed Lewis in connection with his ARP grievance. *Id.* at 28. Browning recommended that the grievance be dismissed, reasoning that the advice he received was consistent with the guidance provided in the manual. *Id.* at 29.

These records do not support a finding of "deliberate indifference" to a serious medical need. At most, they show a disagreement over the inmate's proper medical care. Such disagreements, however, cannot state a § 1983 claim unless "exceptional circumstances" are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). This case does not present exceptional circumstances. Accordingly, Pierce is entitled to summary judgment.

Lewis's claim against the Correctional Defendants fares no better.

Correctional Defendants raise the affirmative defense that Lewis failed to exhaust his administrative remedies prior to initiating this lawsuit. The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he phrase 'prison conditions' encompasses 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

A claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Therefore, a court ordinarily "may not excuse a failure to exhaust." *Id.* at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000)). Moreover, "[e]xhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies. Exhaustion is a precondition to filing suit in federal court." *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 624–25 (D. Md. 2015) (internal citation omitted).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. Md. Code Ann., Corr. Servs. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See id.* § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. Md. Code Regs. ("COMAR") 12.02.28.01 et seq. Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

Thus, for most grievances filed by Maryland state prisoners, filing a request for administrative remedy ("ARP") with the prison's managing official is the first of three steps in exhausting administrative remedies as required under § 1997e(a). *See* COMAR 12.07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. *Id.* at 12.07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. *Id.* at 12.07.01.05C. If the appeal is denied, the prisoner then has 30 days to file a grievance with the IGO. *See* Corr. Servs.

§§ 10-206, 10-210; COMAR 12.07.01.03, .05B. The IGO then reviews the complaint and either dismisses it without a hearing, if it is "wholly lacking in merit on its face," or refers it to an administrative law judge for a hearing. Corr. Servs. §§ 10-207, -208; Cts. & Jud. Proc. § 10-208(c); COMAR 12.07.01.06A, .07, .07B, .08.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. Corr. Servs. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* COMAR 12.07.01.10(B); Corr. Servs. § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted his or her remedies. *See* Corr. Servs. § 10-210. An inmate need not seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners "pursue administrative grievances until they receive a final denial of

their claim, appealing through all available stages in the administrative process." *Chase*, 286 F. Supp. at 530; *see Gibbs v. Bureau of Prison Office*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after the prison authority denied relief"); *Pozo*, 286 F.3d at 1024 (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Kitchen*, 116 F. Supp. 3d at 624 (citing *Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *overruled on other grounds as recognized by Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003)). In *Freeman v. Francis*, the Sixth Circuit stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a *precondition* to filing an action in federal court. The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." 196 F.3d 641, 645 (6th Cir. 1999) (emphasis added) (citation omitted); *see also Miller v. McConneha*, No. JKB-15-1349, 2015 WL 6727547, at *3-*4 (D. Md. Nov. 2, 2015); *Kaufman v. Baynard*, No. 10-0071, 2012 WL 844480, at *12 (S.D.W.V. Feb. 3, 2012), *report and recommendation adopted*, 2012 WL 844408 (S.D.W.V. Mar. 12, 2012); *Blackburn v. South Carolina*, No. 006-2011-PMD-BM, 2009 WL 632542, at *8 (D.S.C. Mar. 10, 2009), *aff'd*, 404 F. App'x 810 (4th Cir. 2010).

It is clear from the record evidence that Lewis failed to exhaust his administrative remedies, as he did not pursue ARP grievances concerning his tomato allergy through all levels of administrative review, including the IGO, prior to filing suit. As I have just noted, exhausting

11

administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal*, 267 F.3d at 121-22. Lewis has failed to provide this Court with any opposition to the affirmative defense. Accordingly, I find that he has failed to exhaust his administrative remedies.

Even if Lewis could demonstrate that administrative exhaustion occurred prior to the filing of this lawsuit, Lewis's claim against Correctional Defendants in their official capacity is nonetheless barred. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend. XI. In effect, the Eleventh Amendment bars suits against a state in federal court unless the state has waived its sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-101 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Moreover, a suit against a state official in that person's official capacity is the equivalent of a suit against the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Correctional Defendants are state employees. *See* Md. Code Ann., State Gov't § 12-101(a) (2015) (defining "State personnel"). To the extent that Lewis seeks money damages against them in their official capacities, he has asserted a claim against the State of Maryland. Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *See Will,* 491 U.S. at 66; *Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599, 611 & n.16 (D. Md. 2016). Furthermore, Maryland has not waived its sovereign immunity for claims brought in federal court. *See Dyer,* 187 F. Supp.

3d at 611. Thus, Lewis's damages claim against Correctional Defendants in their official capacities is barred by the Eleventh Amendment. *See Pennhurst*, 465 U.S. at 100-01.

Lewis's claim also fails to the extent it seeks damages from the Correctional Defendants in their individual capacities due to any deficiency in Pierce's treatment. There is no indication that either Warden Bishop or Warden Nines played any role in decisions regarding Lewis's health care. And it is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane* v. *Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Rather, liability must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (l) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw* v. *Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Such a showing does not exist here. *See Atkins v. Md. Div. of Corr.*, No. PWG-14-3312, 2015 WL 5124103, at *6 (D. Md. Aug. 28, 2015) (mere fact that warden denied grievances, without more, does not warrant imposition of liability). Where, as here, there is an absence of a constitutional injury, supervisory liability is not supported.

## CONCLUSION

Defendants have established that they are entitled to judgment in their favor, and their motions shall be granted. A separate order follows.


Date: August 26, 2019 　　　　　　　　　　　　　　/S/　　　　　　　　
　　　　　　　　　　　　　　　　　　　　Paul W. Grimm
　　　　　　　　　　　　　　　　　　　　United States District Judge